# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3057 | **DATE** | 8/15/2002 |
| **CASE TITLE** | Vendetta Jackson vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Accordingly, City's motion is denied at this point, though it should be plain that this Court maintains an open mind on the subject and stands ready to review the matter once again if changes in the landscape were to call for such further review. (5-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 16 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 AUG 15 PM 4:16 | 8/15/2002 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VENDETTA JACKSON,        )
                         )
        Plaintiff,       )
                         )
   v.                    )   No. 02 C 3057
                         )
CITY OF CHICAGO,         )
                         )
        Defendant.       )

DOCKETED
AUG 1 6 2002

MEMORANDUM OPINION AND ORDER

City of Chicago ("City") has moved to dismiss the Complaint brought against it by Vendetta Jackson ("Jackson"), who seeks to assert rights under Title II of the Americans with Disabilities Act ("ADA") and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Jackson has filed a responsive memorandum, and one aspect of the motion is susceptible to current disposition based on the parties' filings to this date.[1]

Jackson's Complaint Counts I and II look to ADA's Title II as her claimed source of relief. But the availability of Title II to address claims of disability-based employment discrimination is a subject on which the courts have split. Here is the relevant language of 42 U.S.C. §12132:

> Subject to the provisions of this subchapter, no
> qualified individual with a disability shall, by reason
> of such disability, be excluded from participation in
> or be denied the benefits of the services, programs, or

---

[1] Because the other aspects of City's motion require some further input from both sides' counsel, that subject will be addressed during the previously scheduled August 16 status hearing.



activities of a public entity, or be subjected to discrimination by any such entity.[2]

On that score, Jackson Mem. 4-6 really distorts the analysis by characterizing the various Court of Appeals' lineup on the subject as 4 to 1 in favor of Title II's coverage of such employment discrimination claims:

1. Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261 (4th Cir. 1995) does not discuss the question of such coverage at all. Indeed, the absence of any discussion is quite understandable, for the plaintiff there was a doctor who was a neurosurgical resident in the third year of a six-year training program--not quite an employee in the conventional sense. But more importantly in terms of the statutory language, the doctor in training as a resident could readily be viewed as participating in and receiving the benefits "of the services, programs or activities of a public entity" (the University's hospital). And from that perspective it would appear that he could look to Clause 1 for coverage.[3] But whether or not that is so, the case

---

[2] [Footnote by this Court] For convenience in discussion, the "be excluded from participation..." and "be denied the benefits..." provisions will be referred to here as Clause 1, while the "be subjected to discrimination..." provision will be termed Clause 2.

[3] Cases that have ruled affirmatively on the question of coverage of employment discrimination claims under Title II have uniformly disclaimed Clause 1 as the predicate for such coverage, looking instead to the asserted catch-all provision of Clause 2.

2

surely cannot be cited as having <u>held</u> that coverage exists.

2. <u>Innovative Health Sys. Inc. v. City of White Plains</u>, 117 F.3d 37 (2d Cir. 1997) dealt not at all with an employment situation, but rather with the question whether Title II applied to zoning decisions by the City of White Plains. For Jackson to point to that decision as providing support, simply because the later <u>Bledsoe</u> case (discussed hereafter) quoted some general language from <u>Innovative Health</u>, 117 F.3d at 44-45 about Clause 2 being "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context," represents an impermissible bootstrap.

3. <u>Davoll v. Webb</u>, 194 F.3d 1116 (10th Cir. 1999) was extremely careful <u>not</u> to decide the coverage question either way (<u>id</u>. at 1128-30). Instead, then Chief Judge Stephanie Seymour (who authored the opinion for the panel) referred to the issue as "a difficult question that has split the circuits" (<u>id</u>. at 1130) and concluded by finding that noncoverage would not be a subject matter jurisdictional flaw that would prevent consideration of the substantive issues--an approach signaled by the Supreme Court in <u>Steelco v. Citizens for a Better Environment</u>, 523 U.S. 83 (1998).

So what really exists in terms of actual decisions on the subject is a 1-to-1 standoff, with the Eleventh Circuit having upheld

3

coverage in <u>Bledsoe v. Palm Beach County Soil & Water Conservation Dist.</u>, 133 F.3d 816 (11th Cir. 1998) and the Ninth Circuit having rejected coverage in <u>Zimmerman v. Oregon Dep't of Justice</u>, 170 F.3d 1169 (9th Cir. 1999), <u>reh'g denied</u>, 183 F.3d 1161 (9th Cir. 1999).

Two other caselaw references should be made in the interest of completeness. In <u>Staats v. County of Sawyer</u>, 220 F.3d 511 (7th Cir. 2000) our own Court of Appeals eschewed deciding the issue because it was not "squarely presented to us" (<u>id</u>. at 518), after having noted the circuit split (citing only <u>Bledsoe</u> and <u>Zimmerman</u>) as well as referring to differing decisions by district courts within this Circuit. And the Supreme Court's decision in <u>Bd. of Tr. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 360 n.1 (2001) likewise refrained from addressing the issue, stating in part:

> Though the briefs of the parties discuss both sections in their constitutional arguments, no party has briefed the question whether Title II of the ADA, dealing with the "services, programs, or activities of a public entity," 42 U.S.C. §12132, is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject. See, e.g., <u>Russello v. United States</u>, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (internal quotation marks omitted)). The Courts of Appeals are divided on this issue, compare <u>Zimmerman v. Oregon Dept. of Justice</u>, 170 F.3d 1169 (C.A.9 1999), with <u>Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.</u>, 133 F.3d 816 (C.A.11 1998).

4

Both sides of the issue involve some major anomalies. For example, as the strong dissent from the denial of rehearing in Zimmerman (183 F.3d at 1161-69) has pointed out, the panel opinion in that case had looked solely to the statute as assertedly unambiguous on the subject, thus enabling the panel to ignore some patently unambiguous legislative history that pointed in the opposite direction, as well as disregarding the Department of Justice's implementing regulations that have expressly applied Title II to employment discrimination claims.[4] On the other side of the coin, it certainly seems odd that Congress would condition any public employee's invocation of ADA's Title I (which deals in specific and detailed terms with employment discrimination claims) on the employee's exhaustion of administrative remedies, while at the same time Congress would give the same employee free access to Title II--whose coverage of employment discrimination claims, if it exists, is not nearly so explicit--without imposing such a precondition.

What is thus called for at this point is a divination of entrails, without even the benefit of an opaque pronouncement

---

[4] Writing this opinion has generated a sense of "old home week" on the part of this Court. In its sojourns to other parts of the country, sitting by designation as the invitee of other Courts of Appeals, it has had occasion to sit with all three judges who were on the Tenth Circuit panel in Davoll, with one of the panel members (though not the author of the opinion) in Zimmerman and with all three of the Ninth Circuit's judges who dissented from the denial of rehearing in that case.

5

from any Delphic oracle. One such entrail seems tantalizing, though it seems to provide at most a hint of an answer (rather than any definitive response) to the question: It may be noted that the Garrett citation to and quotation from the Russello case has repeated the identical citation and quotation that appear in the Zimmerman panel opinion (170 F.3d at 1177) as one predicate for giving a negative answer to the coverage issue.

With all of that being said, however, this Court is reluctant to dispatch Jackson's case at this threshold stage. This much-mooted issue is very much in flux, and it seems a real possibility that more light will be cast on the subject by our Court of Appeals or even by the Supreme Court in the near future. Accordingly, City's motion is denied at this point, though it should be plain that this Court maintains an open mind on the subject and stands ready to review the matter once again if changes in the landscape were to call for such further review.

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States District Judge

Date: August 14, 2002