# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3057 | **DATE** | 11/25/2003 |
| **CASE TITLE** | Vendetta Jackson vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Because Jackson has not raised a genuine issue of material fact as to whether she is a "qualified individual with a disability," she has not established a central element of her claim. Hence summary judgment in City's favor is appropriate without any need for further exploration of the substantive merits of her individual claims (Bombard v. Ft. Wayne Newspapers, Inc., 02 F3d 560, 562 (7th Cir. 1996)). City is entitled to a judgment as a matter of law under Rule 56, and this action is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 26 2003 | |
| | Notified counsel by telephone. | date docketed | 31 |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/25/2003 | |
| | | date mailed notice | |
| SN | courtroom deputy's initials | SN | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VENDETTA JACKSON,           )
                            )
           Plaintiff,       )
                            )
     v.                     )   No. 02 C 3057
                            )
CITY OF CHICAGO,            )
                            )
           Defendant.       )

MEMORANDUM OPINION AND ORDER

Vendetta Jackson ("Jackson") has sued the City of Chicago ("City"), for which she previously worked as a police officer, under Title II[1] of the Americans with Disabilities Act ("ADA," 42 U.S.C. §12132[2]) and the Rehabilitation Act of 1973 ("Rehabilitation Act," Section 794(a)). Jackson's Complaint asserts that City has violated ADA by (1) refusing to complete the processing of Jackson's request for reinstatement at her job (Compl. ¶41), (2) having a policy that forces officers to pay for the medical examinations they must complete to be eligible for reinstatement (Compl. ¶48), (3) failing to act on her request for reinstatement (Compl. ¶49) and (4) imposing an "independent stable ambulation"

---

[1] Shortly after Jackson brought this action, this Court considered whether Title II (rather than Title I, which expressly deals with employment discrimination) was a proper vehicle for bringing her employment-based suit against a public entity such as City, which is covered by Title II. It concluded that because the Seventh Circuit had not explicitly rejected the possibility of such a Title II action, Jackson could proceed on that basis (215 F.Supp. 975 (N.D. Ill. 2002)). That remains true today.

[2] All further references to Title 42 provisions will simply take the form "Section --."

requirement on all officers (Compl. ¶¶50-51), and that City has violated the Rehabilitation Act by refusing to offer her the reasonable accommodation of a final reinstatement order (Compl. ¶¶63-64).

City has moved for summary judgment as to all of Jackson's claims pursuant to Fed. R. Civ. P. ("Rule") 56, and both parties have complied with this District Court's LR 56.1.[3] Because Jackson has not raised a genuine issue of material fact about whether she is a "qualified individual with a disability" as defined in ADA,[4] City's motion is granted in full and the action is dismissed.

## Summary Judgment Standards

To succeed on a summary judgment motion, the moving party bears the burden of establishing that there is no genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, (477 U.S. 317, 322-23

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon. This opinion cites to City's LR 56.1 statement as "C. St. ¶--," to Jackson's LR 56.1 statement as "J. St. ¶--" and to their respective responses as "C. Resp. ¶--" and "J. Resp. ¶--." Where either party's LR 56.1 statement is undisputed, this opinion cites only the original statement. "C." and "J." designations are also used in referring to all other submissions by the parties.

[4] Both parties take advantage of the well-established doctrine that the applicable standards under ADA and under the Rehabilitation Act are interchangeable (<u>Washington v. Ind. High Sch. Athletic Ass'n, Inc.</u>, 181 F.3d 840, 845 n.6 (7th Cir. 1999) and cases cited there). Thus this opinion's references to ADA requirements should be understood as applicable to both statutes.

2

(1986)). In making that determination a court considers the evidentiary record in the light most favorable to the non-movant and draws all reasonable inferences in its favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But the nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (<u>id</u>.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

What follows is a synopsis of the facts viewed in the light most favorable to nonmovant Jackson. Here, however, that perspective has been materially limited by the equally well established principle that facts improperly controverted (or not controverted at all) by a party are deemed admitted (<u>McGuire v. United Parcel Serv.</u>, 152 F.3d 673, 675 (7th Cir. 1998)). Notably, Jackson has admitted a number of facts by having conceded, in response to City's motion, that her responses to those facts articulated in the City's statement should be stricken, but by then failing to provide any alternate responses.

### Facts

Jackson's checkered career as a police officer began in 1986

when, shortly after she was hired by City, she injured her right knee in a training exercise (C. St. ¶¶3, 24). After her injury Jackson continued to work for City as a police officer at various levels of duty (C. St. ¶¶28-29, 32). Then in 1993 she applied for and received total duty disability benefits from the Retirement Board of the Policemen's Annuity and Benefit Fund ("Board")(Compl. ¶10; C. St. ¶35).

When the Board discontinued those benefits in 1995, Jackson eventually returned to active duty in a limited duty capacity (C. St. ¶¶40, 48). Later Jackson decided that her knee problems prevented her from performing even her assigned limited police duties, and in 1998 she again applied to the Board for disability benefits (C. St. ¶¶51-53). That application was denied, and after multiple appeals the issue was finally put to rest when her Petition for Administrative Review to the Illinois courts was dismissed for want of prosecution (C. St. ¶¶56, 69, 70, 72, 77).

While Jackson's benefits claim wound its way through the appeals process, City allowed her to extend her leave of absence from the police department (C. St. ¶¶78, 81). Nonetheless Jackson took it upon herself to begin the process of seeking reinstatement in August 2000 (J. St. ¶10; C. St. ¶82). That effort stalled almost immediately because Jackson did not have proper documentation from her physicians and because she refused to take a stress test as part of the required physical

4

examination (C. St. ¶¶86, 92, 95, 112, 114-15, 117, 125). City therefore withheld medical clearance for Jackson's reinstatement (C. St. ¶117). Over the next two years City corresponded with Jackson (primarily through her attorney) to clarify what information she had to provide or what steps she had to take to complete the reinstatement process, and also to explain what other options were available to her (such as reassignment to another City job)(C. St. ¶¶124-34).

City finally informed Jackson in April 2002 that because her benefits claim was no longer pending she must take some action or City would accept her resignation (C. St. ¶136). When Jackson did not respond, City formally accepted her deemed resignation in May 2002 (C. St. ¶¶139, 141). By that time Jackson had already filed this action.

## Application of the Rule 56 Standards

ADA protects only "qualified individuals with disabilities" from discrimination in the workplace. As a threshold matter Jackson bears the burden of showing she is within the scope of the statute by demonstrating that she is a "qualified individual with a disability" (Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir. 2000)) as that term is statutorily defined. ADA's Title I[5] defines "qualified individual with a disability"

---

[5] Although Jackson has brought her employment claim under Title II rather than the more employment-specific Title I, both parties refer to cases that use Title I definitions (C. Mem. 11;

5

as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" (Section 12111(8)).

But before this opinion turns to that subject, which proves to be dispositive of Jackson's claims, another potential (and potentially dispositive) problem with her lawsuit is worth identifying. To state a prima facie case, an ADA plaintiff must demonstrate both that she is covered by ADA and that she has suffered an adverse employment action because of her disability (Moore, 221 F.3d at 950). Because it will become apparent that Jackson has not met her initial burden of showing that she is within ADA's protection, there will be no need to resolve the question whether she has suffered a sufficient adverse employment action to complete her prima facie case.

But it must be said that even under a broad view of "adverse employment action" as including employer inaction under appropriate circumstances, Jackson does not at all make clear what asserted adverse employment action she has suffered (Ajayi v. Aramark Bus Servs., Inc., 336 F.3d 520, 531 (7th Cir. 2003); Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465-66 (7th Cir. 2002))). If it is claimed to be City's failure to communicate

---

J. Mem. 6-7). Because this Court agrees that the Title I definitions are in fact more appropriate for the analysis of Jackson's claims, this opinion follows the parties' lead and uses those Title I definitions where appropriate.

6

its decision to her (J. Mem. 6), then (as discussed later) that contention is simply not supported by the record. And if it is claimed to be a deliberate effort on City's part to "deny Jackson the duty disability benefit she would receive following a denial of reinstatement" (J. Mem. 8), that contention is completely unsupported by either the record or case law.

Moreover, because the success of Jackson's suit is dependent on her proving she is a "qualified individual with a disability" as defined in ADA, it is unclear what Jackson's appeal to Section 1983 cases such as Buttitta v. City of Chicago, 9 F.3d 1198 (7th Cir. 1993) has to do with the price of tea in China. Buttitta, id. at 1204 holds that the provision of the Illinois Pension Code considered there guarantees disabled police officers an opportunity to demonstrate they are fit for active duty. Not only does that proposition have nothing whatever to do with ADA or the Rehabilitation Act, but it is also factually incongruous with Jackson's situation. Here City has done precisely what Buttitta (if it were applicable) would require--as also discussed later, it has given Jackson the opportunity to demonstrate whether or not she is fit for active duty by offering her the opportunity to apply for reassignment (C. St. ¶¶129, 132).

It would seem most likely, then, that Jackson has not provided that essential "adverse employment action" ingredient of a prima facie case. But even were that not so, her failure at

7

ADA's very threshold dooms all of her claims. Obviously the first step in analyzing whether Jackson is within the scope of ADA (and the Rehabilitation Act as well) is to determine whether she has a "disability" as that term is statutorily defined in Section 12102(2)(A):[6]

> a physical or mental impairment that substantially limits one or more major life activities....

Bragdon v. Abbott, 524 U.S. 624, 631 (1998) outlines the three-step inquiry for determining whether an employee has a "disability" under ADA. First, a court asks whether the employee has a physical or mental impairment. Next, a court assesses whether the impairment affects a major life activity of the employee. And finally the court considers whether the major life activity identified by the plaintiff is substantially limited because of the impairment.

Although both parties focus on Jackson's knee injury as the

---

[6] It is true that Section 12102(2)(B) and (C) also extend ADA coverage to an individual who "has a record of such impairment" or is "regarded as having such an impairment." J. Mem. 4 takes a cursory stab at invoking Section 12102(2)(C). But her pleadings mention only Section 12102(2)(A) (Compl. ¶¶39, 45, 54, 58-59), and she cannot effectuate an eleventh hour amendment to her case by raising an issue in her responsive memorandum (Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Cebertowicz v. Motorola, Inc., 178 F. Supp.2d 949, 953 (N.D. Ill. 2001)). Moreover, even if Jackson had not forfeited her ability to raise that argument, the legally and factually unsubstantiated consideration of the issue in her memorandum does not flesh out the "regarded as disabled" prong of the ADA disability definition nearly enough to raise a genuine issue of material fact. Hence this opinion considers only whether Jackson is "disabled" under Section 12101(2)(A).

8

physical impairment that could give rise to her status as
disabled, the record plainly does not support such a potential.[7]
Instead it appears that if Jackson has any possibility of being
found disabled, it would have to be because of her fibromyalgia.
Although that ailment was once questioned as a valid medical
diagnosis, this Court has viewed it in the past (Aidinovski v.
Apfel, 27 F. Supp. 2d 1097, 1099, 1103 (N.D. Ill. 1998), quoting
from Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)) and
still views it as a physical impairment.

Because Jackson's fibromyalgia provides a "yes" answer to
Bragdon's step one question (the easiest one), the analysis
proceeds to the remaining two requirements--whether Jackson is
substantially limited in a major life activity. In that respect
Jackson has claimed to be substantially limited in the major life
activity of walking.[8] Walking is of course a major life activity

---

[7] By August 2000 Jackson's orthopedist placed only slight
restrictions on her activities because of her knee condition (C.
St. ¶¶100, 104). Indeed, he found that Jackson's knee had
sufficiently improved to a point where she no longer needed any
walking aids (C. St. ¶¶100, 105). But the doctor who diagnosed
Jackson with fibromyalgia believed that her pain (even if
somewhat improved or intermittent) would continue indefinitely to
affect her physically (C. St. ¶¶58-59, 62; C. Ex. N at 6-12).

[8] C. R. Mem. 2 argues that Jackson's responsive memorandum
"no longer contends that she was substantially limited in
walking." While Jackson could certainly have been more direct in
her delineation of walking as a major life activity, her Mem. 4
does cite to a paragraph in her LR 56.1 statement asserting that
"[o]ther than walking, major life activities that Jackson is
significantly restricted from performing include..." (J. St. ¶3).
With the benefit of every reasonable inference, Jackson may be

as such (Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 483 (7th Cir. 2002); 29 C.F.R. §1630.2(i))--but what of the critical requirement that there must be a substantial limitation of that activity?

Generally an individual is substantially limited in performing a major life activity if, in comparison with an "average person in the general population," she is "limited in the manner or extent to which she can perform" that activity (Dvorak, 289 F.3d at 483; 29 C.F.R. §1630.2(j)(ii)). And in considering the major life activity of walking, courts evaluate such factors as how long plaintiff can walk (both in terms of time and distance), how fast plaintiff can walk, whether plaintiff needs devices or other assistance to walk and whether plaintiff experiences pain or discomfort when walking (see, e.g., Moore, 221 F.3d at 951; Kelly v. Drexel Univ., 94 F.3d 102, 105-07 (3d Cir. 1996)).

C. Mem. 9-11 cites a flood of cases in which plaintiffs were found not substantially limited in their ability to walk. City argues that the limitations of those comparative plaintiffs' abilities to walk were at least as severe as Jackson's limitations (if not more severe), so that the cases validate its position that Jackson was not substantially limited in her

---

viewed as qualifying (at least arguendo) for an examination of whether she is substantially limited in the major life activity of walking (cf. Moore, 221 F.3d at 951).

ability to walk. Indeed, C. Mem. 11 n.3 points out accurately that most of those cases antedate the Supreme Court's acknowledged raising of the barriers established by ADA in Toyota Motor Mfg. v. Williams, 534 U.S. 184 (2002)--in that respect, see Dvorak, 289 F.3d at 484.

For her part, Jackson has presented evidence indicating that her walking is hindered at least to some degree. For example, she testified that (despite what her orthopedic surgeon indicated, see n.7) she uses a cane when walking outside because she often falls when her knee gets tired and gives out (J. Resp. ¶110). Jackson's ex-husband also testified that her legs would sometimes buckle when she was walking or standing up and that she would either fall or grab hold of him to avoid falling (J. St. ¶5). And perhaps most importantly, Jackson's pain doctor commented that although it may wax and wane at times, her significant back pain was likely to affect Jackson for the rest of her life (C. Ex. N at 6, 8, 12). Because the "substantially limits" facet of the Bragdon test calls for a factually intensive and individualized inquiry, this Court is loath to match up the facts from the cases provided by City with the facts presented by Jackson as the possible predicate for concluding that no reasonable jury could find that she was not substantially limited in her ability to walk (Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, 962 (7th Cir. 1996); Kelly,

11

94 F.3d at 108). That would seem to be particularly inappropriate where the impairment that potentially causes the substantial limitation is not of an easily quantifiable musculoskeletal or neurological nature (as is true of fibromyalgia).

So it will be assumed at this point that a reasonable jury could conclude that Jackson has a disability based on a substantial limitation on her ability to walk caused by her fibromyalgia.[9] But that is not at all the end of the inquiry, for it must also be established that Jackson is a "qualified individual with a disability" for her to be brought within the scope of coverage afforded by ADA. As already noted, a "qualified individual with a disability" is someone who can perform the essential functions of the job that she seeks with (or without) reasonable accommodation. That definition explicitly gives "consideration" to an employer's determination of which job functions are essential, especially where an employer has included its expectations in a written job description (Section 12111(8)).

---

[9] It must be observed, however, that any such assumption that Jackson has raised a genuine issue of material fact as to the "substantially limited" aspect of the Bragdon test must be accompanied by some qualms: She has not directly addressed what her specific walking limitations are in terms of distance, time or pace; she has offered absolutely no caselaw to support her position; and she has distinguished just a couple of the numerous cases presented by City on that point, and unpersuasively at that (J. Mem. 5).

12

City has understandably established that being able to handle a firearm adequately is an essential function of being a sworn police officer (regardless of the type of duty the officer is performing) and has embodied that requirement in its written policies (C. St. ¶18; C. Ex. G-1 (General Order 98-2(II)(A))). That decision is well within City's prerogative, and so long as the requirement is not applied in a discriminatory manner this Court will not second-guess City's choice (C. St. ¶107; DePaoli v. Abbott Labs., 140 F.3d 668, 674 (7th Cir. 1998)).

Not only did Jackson fail to demonstrate her ability to handle a firearm as part of her reinstatement evaluation in 2000 (C. St. ¶135), but one of her doctors expressly testified that it would be hazardous to her health and the health of those around her if Jackson *ever* had to carry a gun (J. St. ¶25; C. St. ¶95).[10] City is entitled to credit that factual conclusion from

---

[10] That conclusion was stated unequivocally. When asked what he had meant by saying in his August 11, 2000 note (sent to City by Jackson on August 16) that "due to her ongoing pain/fatigue she cannot resume her duties as a police officer," Dr. Dachman responded (Dachman Dep. 11 in C. Ex. N):

> A. I don't expect that somebody with fibromyalgia and back pain would be safe in the streets either to herself or to a civilian in reference to chasing a combatant or trying to pull the trigger.
>
> I think that she would be both a danger to herself and to me as a civilian because of her diffuse pain, her instability of gait, her fatigue, the effects of fatigue and cognition. I believe that it would be, if you will, police malpractice to allow her to practice as a policeman with this particular problem.

13

Jackson's physician in making its own decision that, according to the standards it has legitimately established for its sworn police officers, Jackson is not a qualified individual with a disability because she cannot perform the essential function of handling a firearm safely (<u>Weigel v. Target Stores</u>, 122 F.3d 461, 467 (7th Cir. 1997), quoting <u>Weiler v. Household Fin. Corp.</u>, 101 F.3d 519, 525 (7th Cir. 1996)).[11]

But ADA also allows for the possibility that Jackson is a "qualified individual with a disability" with the reasonable accommodation of reassignment to another position within City where handling a firearm is not an essential function. Title I's

---

And again (at Dachman Dep. 24):

> A. My general idea of a police officer is they must carry a gun, and it's irrelevant to my mind what she is assigned to do on a daily basis in that if she has to carry a gun, to me that would be hazardous to her health and those around her.
>
> Q. Okay. So when you said that she couldn't perform her police duties, you meant that she could not carry her weapon?
>
> A. Correct. And I also believe that the police are mandated to wear specific belts, gun belts with a gun in place, which I believe would be too heavy for her to wear on a regular basis.

[11] City also contends that Jackson herself admitted that she was unable to return to work when she presented herself for reinstatement (C. St. ¶¶82, 89-90). Jackson, on the other hand, maintains that she did not say that she was not ready to return to work (J. St. ¶¶9, 13; C. St. ¶126; J. Resp. ¶84). Because that conflict (unlike the physician's professional evaluation referred to in the text) presents a credibility issue, its resolution is not appropriate at the summary judgment stage.

definition of "reasonable accommodation" includes "reassignment to a vacant position" in certain (though somewhat narrowly circumscribed) situations (Section 121111(9)(B)); Gile v. United Airlines, Inc., 95 F.3d 492, 497-99 (7th Cir. 1996)). In that respect City would be obligated to have given Jackson the opportunity to take advantage of the typical reassignment procedure that it used regularly (School Bd. of Nassau County v. Arline, 480 U.S. 273, 289 n.19 (1987); Wernick v. Fed. Reserve Bank, 91 F.3d 379, 384-85 (2d Cir. 1996); Weiler, 101 F.3d at 526). City has clearly fulfilled that obligation by repeatedly notifying Jackson that she could apply for reassignment pursuant to City's standard policy (C. St. ¶¶128-29, 132, 136).

Although far from explicit, Jackson's counterargument that City has violated ADA and the Rehabilitation Act by failing to notify her of the possibility of reassignment according to its standard policy seems most akin to a contention that City has not engaged in the required interactive process of accommodation (Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). Thus Jackson asserts that by notifying her attorney of the possibility of reassignment (rather than notifying her directly) City is responsible for the breakdown in that interactive process (J. Resp. ¶129). That notion is simply absurd. Even apart from the possible ethical problems implicit in communicating directly with a party who is represented by

15

counsel, it is hornbook law that an attorney is his client's agent such that notification to counsel equates to notice to the client (Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92-93 (1990); Jones v. Madison Serv. Corp., 744 F.2d 1309, 1312 (7th Cir. 1984)(per curiam)). Moreover, despite some dubious contentions to the contrary by Jackson's attorney (J. Ex. P ¶¶11-13), it is readily apparent that City put Jackson's attorney (and hence Jackson) on ample notice of the possibility of reassignment several times (C. St. ¶¶125, 128-29, 134, 144; C. Ex. R1-R6).

There is no room for doubt that Jackson knew of City's willingness to accommodate her by engaging in its standard reassignment procedures, so that Jackson herself made the choice not to avail herself of that opportunity. (C. St. ¶¶133, 139). Because Jackson (and not City) was thus responsible for the breakdown in any interactive dialogue between the parties, she cannot now claim that she would have been a "qualified individual with a disability" had City properly accommodated her via reassignment (Beck, 75 F.3d at 1135).

In the end, even if a reasonable jury were able to conclude that Jackson is disabled, no such jury could further conclude that Jackson has demonstrated she is a "qualified individual with a disability" as defined in ADA. She cannot perform the essential function of handling a firearm as required of all sworn police officers. And to boot she has utterly failed to

16

participate in an interactive dialogue about using the standard reassignment process offered to her by City more than once.

## Conclusion

Because Jackson has not raised a genuine issue of material fact as to whether she is a "qualified individual with a disability," she has not established a central element of her claim. Hence summary judgment in City's favor is appropriate without any need for further exploration of the substantive merits of her individual claims (Bombard v. Ft. Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996)).[12] City is entitled to a judgment as a matter of law under Rule 56, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 25, 2003

---

[12] It is worth noting, however, that a brief glance at the substantive merits of Jackson's complaint reveals (1) that by not responding to City's arguments Jackson has effectively abandoned many of her claims (for example, her objection to the "independent stable ambulation requirement" (Compl. ¶¶50-51)(see Palmer v. Marion County, 327 F.3d 588, 597-98 (7th Cir. 2003)) and (2) that her remaining claims are not at all supported by the facts (for example, her insistence that City requires officers to pay for their own medical testing (Compl. ¶48; C. St. ¶130)).